NOTICE
The text of this opinion may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

No. 3--08--0431

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court ) of the 12th Judicial Circuit, ) Will County, Illinois, |
| Plaintiff-Appellee, | ) |
| v. | ) No. 03--CF--199 |
| JENNIFER DEL PRETE, | ) Honorable ) Carla Alessio Policandriotes, |
| Defendant-Appellant. | ) Judge, Presiding. |

ORDER

The defendant, Jennifer Del Prete, filed a postconviction petition, alleging ineffective assistance of trial counsel because counsel failed to: (1) investigate, interview, and call available experts to challenge the State's expert testimony; and (2) inform the defendant that he had been previously suspended from the practice of law because of unethical behavior as a State's Attorney in Will County. The trial court summarily dismissed the petition as frivolous and patently without merit. The defendant appeals, and we affirm.

FACTS

On December 27, 2002, I.Z., the three-month-old victim, became unresponsive while under the defendant's care at a day-care facility. The defendant called 911 and performed cardiopulmonary resuscitation (CPR) on the victim. When the

EXHIBIT B

paramedics arrived, the victim was not breathing and had no pulse. The paramedics performed CPR and placed a breathing tube into the victim's trachea. The paramedics placed medication down the breathing tube, and the victim, although not breathing on her own, exhibited a sinus rhythm, which is a normal heart rate. At the hospital, the victim was unconscious and placed on a ventilator. An examination showed that the victim had no bruising or any other external signs of injury. However, a Computed Tomography (CT) Scan showed acute and chronic bleeding in the victim's brain. Subsequent CT Scans showed bilateral subdural hematomas in the victim's brain, and a retinal scan showed retinal hemorrhages in the victim's eyes. The victim received medical treatment for about a year, but she never recovered and died on November 9, 2003.

On April 8, 2004, the defendant was charged with first degree murder (720 ILCS 5/9--1(a)(2) (West 2004)). The indictment alleged that the defendant shook the victim, knowing that it created a strong probability of death or great bodily harm, and thereby caused the victim's death. A bench trial was held on February 23 and 24, 2005, and March 1, 2, 3, and 4, 2005.

At trial, both the State and the defendant called expert witnesses to testify about the cause of the victim's injuries. Dr. Howard Hast, the victim's treating physician between December 30, 2002, and January 16, 2003, testified as an expert in pediatric critical care medicine for the State. Hast opined that the victim suffered an apparent life threatening event

(ALTE), which occurred when an infant had an alteration or cessation of breathing, a change in muscular tone, and change in skin color and their caretaker was frightened or panicked. He further opined that the cause of the victim's bilateral subdural hematomas was that "she was shaken or had some other accelerating/decelerating injury occur such as being dropped or thrown or something like that" because he found no other cause for her injuries. He stated that subdural hematomas and retinal hemorrhages were classic indicators of shaken baby syndrome. He also noted that gastric reflux may have been the cause of the ALTE, but it was not possible to determine whether that was the case without evidence of such issues prior to the ALTE because gastric reflux occurred with brain injuries.

Dr. Emalee Flaherty testified as an expert in pediatric and child abuse medicine for the State. She reviewed the police reports, the paramedic reports, and the victim's medical records, talked with the victim's parents and Hast, and examined the victim while she was alive. Based on this evidence, Flaherty opined that the victim suffered abusive head trauma, also known as shaken baby syndrome. She explained that abusive head trauma was a form of child abuse in which a child suffered some acceleration and deceleration injuries to the brain caused by shaking or some other force. She testified that the victim had subdural and subarachnoid hematomas and retinal hemorrhages and that those injuries could only be caused by the acceleration and deceleration forces seen in shaken baby syndrome. She stated

3

that severe forces would be needed to cause the victim's injuries and that the effects of the forces would be immediate. She stated that the victim's injuries could not have been caused by the administration of CPR, a simple fall, or seizures.

On cross-examination, Flaherty testified that she had never seen a study that found CPR caused retinal hemorrhages. She later noted an informal consensus existed, which stated that if CPR caused retinal hemorrhaging, it was a rare occurrence, and it would not be as extensive as in the victim's case. She also testified that she looked for external bruising or lacerations when she evaluated any case of child abuse but that they were uncommon in cases of shaken baby syndrome. She stated that the victim had no external bruising or lacerations.

Dr. Wayne L. Tucker testified as an expert in pathology and pediatric medicine for the defendant. He reviewed the police reports, the paramedic reports, the victim's medical records, and Flaherty's report in preparing for his testimony. Tucker opined that the victim's injuries were not caused by shaken baby syndrome and that they occurred 18 to 24 hours before the event at the day-care facility. He stated that the definition of shaken baby syndrome included external bruising but that the victim showed no signs of external bruising. Tucker offered a number of explanations for the injuries. First, he opined that the victim's injuries may have been caused by undetectable seizures, which were the result of toxicity from the prescribed antibiotic, Amoxicillin, that the victim took, because the

4

medical records after December 27, 2002, showed that the victim was treated for seizures at the hospital. Second, he opined that the injuries may have been caused by the chronic subdural hematomas that were found on the victim's brain. He stated that chronic subdural hematomas that were 7 to 10 days old could rebleed because of an increase in intracranial pressure, coughing, sneezing, falling, movement, or gastric reflux. Lastly, he opined that the victim's injuries may have been caused by gastric reflux because the victim had a history of such problems.

Tucker testified that retinal hemorrhaging was not uncommon in infants under the age of six months. He stated that the retinal vessels were fragile and susceptible to hemorrhaging caused by turning over, coughing, sneezing, tantrums, or CPR.

On cross-examination, Tucker testified that when the victim came to the hospital, her blood levels were normal and did not indicate the presence of toxic levels of drugs. He also testified that he did not have a record of the victim having a seizure on December 27, 2002, and he could not state with a reasonable degree of medical certainty that a seizure caused the victim's injuries.

The trial court found the defendant guilty of first degree murder and sentenced her to 20 years in prison. The defendant appealed, arguing that the evidence was insufficient to prove her guilty beyond a reasonable doubt. We affirmed the defendant's conviction. People v. Del Prete, No. 3--05--0868 (2007)

(unpublished order under Supreme Court Rule 23).

On March 24, 2008, the defendant filed a postconviction petition, alleging that her trial counsel was ineffective and that she was innocent based on the insufficiency of the evidence. Specifically, she alleged that her trial counsel was ineffective because he failed to investigate, interview, and call available experts to challenge the State's expert testimony when there was medical research available at the time of trial that would have challenged the diagnosis of shaken baby syndrome made by the State's experts. In support of the allegation, she attached the brief and an opinion from a Wisconsin case, State v. Edmunds, 308 Wis. 2d 374, 746 N.W.2d 590 (2008), which allegedly had similar expert testimony and was reversed on the basis of newly discovered evidence, and medical research asserting that infants who were found to have died as a result of shaken baby syndrome may have died from vaccine damage. The defendant also alleged that trial counsel was ineffective because he failed to inform her that he had been previously suspended for three years from the practice of law because of unethical behavior as a State's Attorney in Will County. The defendant attached the decision of the Attorney Registration and Disciplinary Commission (ARDC).

On May 30, 2008, the trial court dismissed the petition as frivolous and patently without merit.

The defendant appeals.

## ANALYSIS

On appeal, the defendant argues that the trial court erred

when it summarily dismissed her postconviction petition as frivolous and patently without merit.

The Post-Conviction Hearing Act (Act) provides a mechanism for criminal defendants to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution. 725 ILCS 5/122--1(a)(1) (West 2006). The trial court may summarily dismiss the petition if it determines that the petition is frivolous or patently without merit. 725 ILCS 5/122--2.1(a)(2) (West 2006). A petition is "considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.'" People v. Edwards, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). The petition does not need to include legal arguments or citation to legal authority, and it need not plead sufficient facts from which the trial court could find a valid claim of a deprivation of a constitutional right. Edwards, 197 Ill. 2d 239, 757 N.E.2d 442. However, the petition must be supported by "affidavits, records, or other evidence" or explain their absence if they are unavailable. 725 ILCS 5/122--2 (West 2006). We review de novo the trial court's summary dismissal of a postconviction petition. Edwards, 197 Ill. 2d 239, 757 N.E.2d 442.

To establish a claim for ineffective assistance of counsel, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's

7

representation prejudiced defendant's case. <u>Strickland v. Washington</u>, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

The defendant first claims that his counsel was ineffective for failing to investigate, interview, and call available experts to challenge the State's expert testimony when there was medical research available at the time of trial that would have challenged the diagnosis of shaken baby syndrome made by the State's experts. In support of this claim, the defendant relies on a Wisconsin case, <u>Edmunds</u>, 308 Wis. 2d 374, 746 N.W.2d 590, and medical research asserting that infants who were found to have died as a result of shaken baby syndrome may have died from vaccine damage.

In <u>Edmunds</u>, a day-care provider was charged with first degree murder after an infant became unresponsive while in her care, died, and was later found to have had a fatal head injury. Both the State and the defendant presented expert witnesses at trial. The State's experts opined that the fatal head injury was caused by either violent shaking or violent shaking with impact and that the shaking would have had an immediate effect on the infant. The defendant's expert agreed that the fatal injury was caused by a violent shaking but opined that the injury occurred before the child arrived at the day-care facility. According to this expert, the infant had a lucid interval after the shaking and then suffered a seizure at the day-care facility that resulted in her death. The defendant was convicted. <u>Edmunds</u>,

308 Wis. 2d 374, 746 N.W.2d 590.

Ten years after the defendant's conviction, the defendant filed a motion for a new trial based on newly discovered evidence of developments in the medical community about shaken baby syndrome since the trial. At an evidentiary hearing on the motion, the defendant presented expert testimony from six doctors who stated that there was significant debate in the medical community about whether an infant can be fatally injured through shaking alone, whether an infant may suffer head trauma yet experience a lucid interval prior to death, and whether other causes mimic the symptoms of shaken baby syndrome. The trial court denied the motion because the defendant did not establish a reasonable probability of a different result with the new evidence. The Court of Appeals reversed and remanded the case for a new trial because the significant debate in the medical community constituted newly discovered evidence and because although the old evidence was not completely dispelled by the new evidence, there was a reasonable probability that a jury would have a reasonable doubt as to the defendant's guilt after hearing the old and new evidence. Edmunds, 308 Wis. 2d 374, 746 N.W.2d 590.

While we find the facts in Edmunds are similar to the facts in the defendant's case, Edmunds does not support a claim of ineffective assistance of counsel for failing to investigate, interview, and call available experts to challenge the State's expert testimony in this case. The "new evidence" discussed in

Edmunds was evidence that was actually presented in this case. The defendant states in her brief that "the research cited in the Edmunds cause shows that today and at the time of trial in the instant cause (2005) the medical community was and is divided; there is no longer agreement as to either the timing or the causes of the constellation of signs defined at Edmunds's trial (and the Del Prete trial) as being exclusively diagnostic of shaking." However, the defendant ignores that, her expert, Tucker, testified about the possible causes of the victim's injuries, other than shaken baby syndrome, that were similar to the theories of the new experts in Edmunds. Tucker opined that the injuries could have been caused by seizures, chronic subdural hematomas, or gastric reflux. He also opined that the injuries occurred before the event at the day-care facility and that the victim did not exhibit the typical signs of shaken baby syndrome, as she had no external bruising. Accordingly, defendant's trial counsel did not provide ineffective assistance on the basis of Edmunds because he presented expert testimony substantially similar to the new expert testimony in Edmunds.

Furthermore, the defendant's trial counsel did not provide ineffective assistance because he did not provide expert testimony about medical research showing that the injuries indicative of shaken baby syndrome may have been caused by vaccine damage. The defendant's counsel had Tucker, a medical expert, review the victim's medical records, and Tucker testified at trial as to the possible causes of the victim's injuries based

10

on the evidence in the record. Tucker testified about the possible causes that were similar to the theories of the experts in <u>Edmunds</u>, but he did not mention vaccine damage as a possible cause. The defendant has not provided any affidavits or other evidence to show that vaccine damage was a possible cause of the victim's injury and that counsel erred in relying on Tucker. We must assume that the defendant's counsel reasonably relied on Tucker's expert review and evaluation of the victim's records in the course of preparing the case. Therefore, we find that the defendant failed to state that gist of a constitutional claim for ineffective assistance based on a failure to investigate, interview, and call available experts to challenge the State's expert testimony in this case.

The defendant also alleged in her petition that her trial counsel was ineffective because he failed to inform her that he had been previously suspended for three years from the practice of law because of unethical behavior as a State's Attorney in Will County. The defendant claims that she would have retained another attorney if she had known of counsel's previous suspension.

The defendant's allegations of ineffective assistance based on trial counsel's failure to inform her of his previous suspension from the practice of law are conclusory and patently without merit. The defendant has not alleged that counsel's past suspension affected his performance or how her lack of knowledge of it prejudiced her, and there is no <u>per se</u> rule that an

on the evidence in the record. Tucker testified about the possible causes that were similar to the theories of the experts in <u>Edmunds</u>, but he did not mention vaccine damage as a possible cause. The defendant has not provided any affidavits or other evidence to show that vaccine damage was a possible cause of the victim's injury and that counsel erred in relying on Tucker. We must assume that the defendant's counsel reasonably relied on Tucker's expert review and evaluation of the victim's records in the course of preparing the case. Therefore, we find that the defendant failed to state that gist of a constitutional claim for ineffective assistance based on a failure to investigate, interview, and call available experts to challenge the State's expert testimony in this case.

The defendant also alleged in her petition that her trial counsel was ineffective because he failed to inform her that he had been previously suspended for three years from the practice of law because of unethical behavior as a State's Attorney in Will County. The defendant claims that she would have retained another attorney if she had known of counsel's previous suspension.

The defendant's allegations of ineffective assistance based on trial counsel's failure to inform her of his previous suspension from the practice of law are conclusory and patently without merit. The defendant has not alleged that counsel's past suspension affected his performance or how her lack of knowledge of it prejudiced her, and there is no <u>per se</u> rule that an

on the evidence in the record. Tucker testified about the possible causes that were similar to the theories of the experts in <u>Edmunds</u>, but he did not mention vaccine damage as a possible cause. The defendant has not provided any affidavits or other evidence to show that vaccine damage was a possible cause of the victim's injury and that counsel erred in relying on Tucker. We must assume that the defendant's counsel reasonably relied on Tucker's expert review and evaluation of the victim's records in the course of preparing the case. Therefore, we find that the defendant failed to state that gist of a constitutional claim for ineffective assistance based on a failure to investigate, interview, and call available experts to challenge the State's expert testimony in this case.

The defendant also alleged in her petition that her trial counsel was ineffective because he failed to inform her that he had been previously suspended for three years from the practice of law because of unethical behavior as a State's Attorney in Will County. The defendant claims that she would have retained another attorney if she had known of counsel's previous suspension.

The defendant's allegations of ineffective assistance based on trial counsel's failure to inform her of his previous suspension from the practice of law are conclusory and patently without merit. The defendant has not alleged that counsel's past suspension affected his performance or how her lack of knowledge of it prejudiced her, and there is no <u>per se</u> rule that an

on the evidence in the record. Tucker testified about the possible causes that were similar to the theories of the experts in <u>Edmunds</u>, but he did not mention vaccine damage as a possible cause. The defendant has not provided any affidavits or other evidence to show that vaccine damage was a possible cause of the victim's injury and that counsel erred in relying on Tucker. We must assume that the defendant's counsel reasonably relied on Tucker's expert review and evaluation of the victim's records in the course of preparing the case. Therefore, we find that the defendant failed to state that gist of a constitutional claim for ineffective assistance based on a failure to investigate, interview, and call available experts to challenge the State's expert testimony in this case.

The defendant also alleged in her petition that her trial counsel was ineffective because he failed to inform her that he had been previously suspended for three years from the practice of law because of unethical behavior as a State's Attorney in Will County. The defendant claims that she would have retained another attorney if she had known of counsel's previous suspension.

The defendant's allegations of ineffective assistance based on trial counsel's failure to inform her of his previous suspension from the practice of law are conclusory and patently without merit. The defendant has not alleged that counsel's past suspension affected his performance or how her lack of knowledge of it prejudiced her, and there is no <u>per se</u> rule that an

attorney who has been previously suspended from the practice of law must inform his or her client of the past suspension. See People v. Franklin, 167 Ill. 2d 1, 656 N.E.2d 750 (1995) (stating that when counsel is involved in ARDC proceedings, there is no per se rule that a defendant should be granted a new trial; counsel's conduct must be judged under the Strickland test); United States v. Stevens, 978 F.2d 565 (10th Cir. 1992) (stating that an attorney's representation is not per se ineffective where a licensed attorney is disbarred without notice). Thus, we find that the defendant failed to state the gist of a constitutional claim for ineffective assistance based on counsel's failure to inform her of his past suspension.

Finally, the defendant's petition and brief on appeal make a claim of total innocence based on the sufficiency of the evidence. This claim is barred by res judicata because we found on direct appeal that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt. See People v. Beaman, 229 Ill. 2d 56, 890 N.E.2d 500 (2008) (stating in the context of postconviction proceedings that issues decided on direct appeal are barred by res judicata).

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

LYTTON, J., with O'BRIEN, PJ., and WRIGHT, J., concurring.